UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

    Plaintiff,

v.                                            CASE NO: 8:12-cv-829-T-26EAJ

STEPHEN H. HAMIC; HAMIC, JONES, HAMIC
& STURWOLD, P.A.; WILLIAM L. NICHOLAS
and MOLLY WESCOMB,

    Defendants.
_____/

**O R D E R**

Before the Court is Plaintiff's Motion for Final Summary Judgment and Statement of Undisputed Facts (Dkts. 44 & 45), and Defendants' Response in Opposition and Statement of Supplemental Facts.  (Dkts. 47 & 48).  After careful consideration of the motion, the applicable law, and the entire file, the Court concludes the motion should be denied.

**BACKGROUND**

Plaintiff Philadelphia Indemnity Insurance Company (Philadelphia) brings this action against Stephen H. Hamic (Hamic), Hamic, Jones, Hamic & Sturwold, P.A. (the

Firm), William L. Nicholas, and Molly Wescomb[1] seeking a declaration of rights as to both the duty to defend and the duty to indemnify Hamic and the Firm under the Firm's professional liability insurance policy.  (Dkt. 1, para. 9).  The complaint alleges that the underlying suit[2] seeks damages for intentional torts only: conspiracy to commit malicious prosecution, malicious prosecution, conspiracy to commit abuse of process, abuse of process, and a violation of Florida's RICO statute.  (Dkt. 1, para. 10).  Philadelphia alleges in the complaint that these claims "are not by reason of a negligent act, error, or omission in the performance of services performed or advice given by Stephen Hamic to another, for a fee or otherwise, in the course of his practice as an accountant."  (Dkt. 1, para. 10).  Plaintiff requests in this motion for summary judgment that this Court find no duty to defend nor duty to indemnify either Hamic or the Firm.

## THE PROFESSIONAL LIABILITY POLICY

The policy provides coverage for professional liability for the Firm and Hamic[3] "by reason of a negligent act, error or omission in the performance of professional

---

[1]   Molly is Mr. Nicholas' daughter.

[2]   <u>William L. Nicholas, Susan E. Nicholas and Molly Wescomb v. Stephen H. Hamic and Hamic Jones Hamic & Sturwold, P.A.</u>, Case No. 09-CA9895, pending in the Tenth Judicial Circuit in and for Polk County, Florida.

[3]   Hamic is covered by virtue of his status as a "past or present partner, officer, director, stockholder or employee of the named insured" with respect to "professional services rendered on behalf of the named insured" only.  (Dkt. 45, Exh. F, doc. 1-1, pp. 13 & 15 of 40).

services, . . . ."[4]  "Professional services" is defined as any "services performed or advice given by any insured to others for a fee or otherwise in the conduct of the insured's practice as an accountant; . . ."[5]  Professional services includes libel, slander or invasion of privacy "if arising out of" the professional services just described.[6]  Professional services also includes "consulting in the course of the practice of accountancy" and "acting as a personal fiduciary."[7]

Section E under the exclusions portion of the policy excludes "any claim or damages arising out of any dishonest, fraudulent, criminal, malicious or knowingly wrongful or reckless act, error or omission of any insured, provided that such determination results from either a legal adjudication, regulatory ruling or legal admission."[8]  The policy provides that exclusion E does "not invalidate this insurance as to any insured who did not act with knowledge or consent in the matter in which the exclusion applies."[9]

## SUMMARY JUDGMENT STANDARD

---

[4] See docket 45, Exh. F, doc. 1-1, p. 13 of 40, Coverage–Professional Liability..

[5] See docket 1, para. 13, Exh. A, Definitions, X.A. and docket 45, Exh. F, doc. 1-1, p. 16 of 40, Definitions, X.A.

[6] See docket 45, Exh. F, doc. 1-1, p. 16 of 40, Definitions, X.E.

[7] See docket 45, Exh. F, doc. 1-1, p. 11 of 40, Definitions, X.F. & X.G.

[8] See docket 45, Exh. F, doc. 1-1, p. 11 of 40, Exclusions E.

[9] See docket 45, Exh. F, doc. 1-1, p. 18 of 40, Exclusions.

Summary judgment is properly granted where there is no genuine dispute regarding a material fact. Fed.R.Civ.P. 56(a). A summary judgment is an appropriate vehicle for interpretation of an insurance contract as a question of law. See, e.g., Technical Coating Applicators, Inc. v. U.S. Fidelity & Guar., Co., 157 F.3d 843 (11th Cir. 1998); Talat Enters., Inc. v. Aetna Life & Cas., 952 F.Supp. 773, 776 (M.D.Fla. 1996). The policy, however, must contain clear and unambiguous wording to resolve the issue as a matter of law. Id. at 776.

## DUTY TO DEFEND

The duty to defend is determined solely from the allegations of the complaint. Wellcare of Fla., Inc. v. American Int'l Specialty Lines Ins. Co., 16 So.3d 904, 906 (Fla.Dist.Ct.App. 2009) (citing Biltmore Constr. Co. v. Owners Ins. Co., 842 So.2d 947, 949 (Fla.Dist.Ct.App. 2003)).[10] "If the underlying complaint alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit." Lime Tree Vill. Cmty. Club Ass'n Inc. v. State Farm Gen. Ins. Co., 980 F.2d 1402, 1405 (11th Cir. 1993) (quoting Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d at 813-14 (Fla.Dist.Ct.App. 1985)). "[A]ny doubt about the duty to defend must be resolved in favor of the insured." Estate of

---

[10] See also Colony Ins. Co. v. Suncoast Med. Clinic, LLC, 726 F.Supp.2d 1369, 1378 (M.D. Fla. 2010) (citing Estate of Tinervin v. Nationwide Mut. Ins. Co., 23 So.3d 1232, 1238 (Fla.Dist.Ct.App. 2009) and Lawyers Title Ins. Corp. v. JDC (Am.) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995), which hold that the duty to defend exists if the complaint alleges facts, even if untrue, that bring the case within the policy).

Tinervin v. Nationwide Mut. Ins. Co., 23 So.3d 1232, 1238 (Fla.Dist.Ct.App 2009) (quoting Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc., 771 So.2d 579, 580-81 (Fla.Dist.Ct.App. 2000)); Baron Oil, 470 So.2d at 814.

*Facts as alleged in the Complaint*

The underlying case travels on the Fourth Amended Complaint.[11] The gist of the lawsuit concerns the arrest of Bill Nicholas and Molly Wescomb on May 28, 2009, after Steve and Mike Hamic[12] approached the state attorney's office with information that Nicholas and Wescomb stole over $60,000 from Exit Realty. As alleged, Steve Hamic and the Firm provided accounting services for Exit Realty, a real estate brokerage firm that consisted of Bill and Susan Nicholas, Molly Wescomb, and Mike Hamic, from its inception in 2002 through early 2007. Hamic and the Firm prepared Exit Realty's state and federal tax returns, rendered business financial advice, and assisted in internal corporate bookkeeping. As part of these services, Hamic and the Firm "verified that Molly was a member and employee of Exit Realty and reflected her wages paid as an employee."[13] According to the complaint, Molly Wescomb worked as an employee both

---

[11] All of the complaints are relevant to resolve when the duty to defend arose.

[12] Mike Hamic is Steve Hamic's brother.

[13] See docket 15-2, para. 12.

while she was part owner in Exit Realty and after she transferred her ownership.[14]  She often worked from home via the internet and telephone.

After a dispute arose between Mike Hamic and Exit Realty concerning the value of Mike's interest in the company, Steve Hamic, on behalf of Mike Hamic, analyzed the books and records of Exit Realty and performed valuations of Mike Hamic's interest. Exit Realty eventually filed a lawsuit against Mike Hamic when it became obvious a resolution was unattainable and after, according to the complaint, Mike Hamic, not Steve Hamic, made threats of filing complaints against Bill Nicholas.[15]  Two days after the filing of the action, both Hamics and the Firm "conspired" to commit malicious prosecution, extortion and abuse of process.[16]  The complaint alleges that Steve Hamic agreed to use his professional skills, resources, and access to Exit's Realty business records through the Firm to fabricate false criminal charges against Nicholas and Wescomb.

Steve Hamic then delivered a memorandum with confidential documents he had prepared for Exit Realty to the state attorney, contending that Nicholas and Wescomb had stolen money from Exit Realty by paying Wescomb a salary and benefits.  At the first meeting with the state attorney's office, Mike Hamic, not Steve, gave a statement that in

---

[14]  See docket 15-2, para. 10.

[15]  See docket 15-2, paras. 15 & 16.

[16]  See docket 15-2, para. 17.

December 2007, after Steve Hamic and the Firm were no longer providing accounting services for Exit Realty, a bookkeeper brought to his attention that Wescomb was being paid as an employee when she was not working there.[17] Mike Hamic further stated that after he confronted Nicholas, Wescomb continued to receive paychecks and coverage under the company's health insurance in the amount of over $60,000.

Steve and Mike Hamic continued to provide more documents to the state attorney's office and the state attorney's office then subpoenaed documents from a bank, a credit card company, and a health insurance company regarding Wescomb's payments and benefits. Steve Hamic prepared a forensic accounting analysis of those documents and provided more analyses at the request of the state attorney's office.[18] The threatening communications enumerated in the complaint are alleged to have been made by Mike Hamic only. Steve Hamic concluded his analysis with the assertion that Nicholas and Wescomb had committed felony grand theft of $70,156.91 from Exit Realty through wages and health insurance benefits. The state attorney's office arrested Nicholas and Wescomb one month later. The complaint alleges that Mike, not Steve Hamic, continued to negotiate with Nicholas concerning the money owed. The state attorney nolle-prossed the criminal charges about two months after the May 2009 arrest.[19]

---

[17] See docket 15-2, para. 18. b.

[18] See docket 15-2, para. 18. n.

[19] See docket 15-2, paras. 20 & 22..

With respect to the communications made by the Hamic brothers, the complaint alleges that Steve Hamic concealed from the state attorney's office the state and federal tax forms and returns, including the ones he had prepared as accountant for Exit Realty, which would show that Wescomb was an employee drawing legitimate wages and benefits.[20] Both Hamic brothers "either knew these assertions were false when made or acted in reckless disregard of their truth or falsity."[21] The complaint further alleges that the Hamic brothers acted with "legal malice in that they procured the criminal actions: (a) without probable cause; (b) knowing the allegations were false or in willful ignorance of their falsity; . . ."[22]

*Negligent act, error and omission*

The counts that encompass the relevant dispute regarding the duty to defend include the counts for malicious prosecution and civil conspiracy,[23] as those counts, argue Hamic and the Firm, fall under the "negligent act, error or omission" clause in the policy and not under the exclusion clause concerning wrongful acts. The issue is whether the facts as alleged include any negligent conduct in the performance of professional

---

[20] See docket 15-2, para. 18. y.

[21] See docket 15-2, para. 18. x.

[22] See docket 15-2, para. 23.

[23] Hamic and the Firm do not appear to contest that the remaining counts require intentional acts, not falling under the "negligent act, error or omission" clause of the policy.

services. Based on Florida law, the Court finds that the allegations of the complaint include such conduct, thereby triggering the duty to defend the entire underlying action.[24]

The tort of malicious prosecution consists of six elements, one of the elements being malice. Burns v. GCC Beverages, Inc., 502 So.2d 1217 (Fla. 1986); Adams v. Whitfield, 290 So.2d 49 (Fla. 1974). There are two types of malice: actual malice and legal malice. Wilson v. O'Neal, 118 So.2d 101, 105 (Fla.Dist.Ct.App. 1960). The parties agree that only legal malice is implicated in this case. Legal malice can be inferred from

---

[24] This Court refrains from deciding whether the word "negligent" placed before the words "act, error or omission" modifies just the word "act" or all three of the words. Philadelphia urges this Court to interpret the policy such that the word "negligent" modifies each word to include "negligent error" and "negligent omission" and cites supporting authority, although none from Florida. See Accordia Ne., Inc. v. Thesseus Int'l Asset Fund NV., Inc., No. 01 Civ 5398, 2003 WL 22057003, at *2 (S.D.N.Y. Sept. 4, 2003) (holding that majority view is that "negligent" modifies all three words and citing supporting cases from the Fourth, Sixth, Seventh and Ninth Circuits and Alaska, but also citing cases from jurisdictions that do not follow the majority view). Contrary authority exists, however. See USM Corp. v. First State Ins. Co., 652 N.E.2d 613, 614-15 (Mass. 1995) (holding that the phrase "negligent act, error or omission" does not necessarily limit liability to circumstances involving negligence; other courts have recognized certain nonnegligent errors); see also Home Ins. Co. v. St. Paul Fire & Marine Ins. Co., 229 F.3d 56, 65 (1st Cir. 2000) (holding that "negligent act, error or omission" phrase in legal malpractice policy covered attorney's later violation of continuing ethical duty to keep client confidences as legal services under a professional liability policy); Burton v. Continental Cas. Co., No. 5:06cv12-DCB-JMR, 2007 WL 2669201, at *10 n. 11 (S.D. Miss. Sept. 6, 2007) (citing Home Ins. and holding that duty to turn over files of former clients extends beyond term of representation). The Florida courts, however, have not been faced with the interpretation of this precise phrase, although the language appears in numerous policies as evidenced by reading Florida case law. In this particular case, the Court finds it unnecessary to interpret the phrase as a whole because it finds some of the alleged conduct constitutes a "negligent act" inherent in the rendering of professional services and any ambiguity in the phrase must be construed against the insurer.

the lack of probable cause. Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1355 (Fla. 1994). Malice, however, is not synonymous with want of probable cause. White v. Miami Home Milk Producers Ass'n, 143 Fla. 518, 197 So. 125, 126 (Fla. 1940). Legal malice may also be inferred from "gross negligence or great indifference to persons, property, or the rights of others." Mancusi, 632 So.2d at 1357.

Despite the clear Florida mandate that malice may be inferred from gross negligence, Philadelphia strenuously argues that legal malice "requires proof of an *intentional* act performed without justification or excuse" and therefore does not constitute negligent conduct covered by the policy. See Olson v. Johnson, 961 So.2d 356, 359 (Fla.Dist.Ct.App. 2007) (emphasis added). The quoted language from Olson is taken from a criminal case, Reed v. State, 837 So.2d 366, 368-69 (Fla. 2002), and Olson, later on in the opinion, cites Mancusi for the proposition that legal malice may be based on gross negligence. What is evident from reading the plethora of cases discussing intentional acts versus intentional torts versus nonnegligent acts, is the difficulty in differentiating the context within which each term is used.[25] As Hamic and the Firm point out, gross negligence is alleged in the complaint by its assertion of legal malice and that

---

[25] In the context of this case involving professional liability insurance, professionals make mistakes, and those mistakes are acts which in and of themselves are at the very least nonnegligent and depending on the particular opinion, perhaps denoted intentional.

Hamic acted in reckless disregard of the truth or falsity of the communications made to the state attorney.[26]

Philadelphia relies heavily on Wellcare for the premise that Hamic's actions described in the complaint do not constitute the kind of mistakes inherent in the practice of accountancy. Wellcare is inapposite. There, an insurance agent hired by a third party administrator, Wellcare, sued Wellcare for breach of a marketing agreement based on Wellcare's "deliberate, intentional, systematic" desire to exclude unprofitable health care plans as a product. The actions of Wellcare had nothing to do with its rendering professional services as a third party administrator to its own insurance agent as a marketer of Wellcare products. Unlike Wellcare, there is no question that Hamic was performing professional services, or services customarily performed by an accountant, when he ran spread sheets, reviewed tax returns, analyzed financial documents, and performed forensic accounting.[27] He performed accounting services for Exit initially, and

---

[26] In Florida in the context of indemnification clauses, where the term "negligence" is not limited to simple negligence or defined in any particular manner, the kind of negligence may be simple or gross. See Zeigler Crane Rentals, Inc. v. Double A Indus. Inc., 16 So.2d 907, 914 (Fla.Dist.Ct.App. 2009). Generally, gross negligence does not amount to conduct intentionally causing the injury. See Shipley, Annotation, Liability Insurance as Covering Accident, Damage, or Injury Due to Wanton or Wilful Misconduct or Gross Negligence, 20 A.L.R.3d 320, § 4 (1968 and Supp. 2012).

[27] Florida law defines "practicing public accountancy" in part as follows:
(a) Offering to perform or performing for the public one or more types of services involving the expression of an opinion on financial statements, the attestation as an expert in accountancy to the reliability or fairness of presentation of financial information, the utilization of any form of opinion or

relied on documents he prepared for it, to provide information to the state attorney's office regarding Wescomb being paid as an employee. He then performed forensic accounting services from his documents and from additional subpoenaed records for the state attorney. The policy's definition of professional services specifically includes those services rendered "to others for a fee or otherwise." Under the plain language of the policy, Nicholas, Wescomb, Mike Hamic and the state attorney's office are "others" and the fact that Hamic and the Firm did not receive money for Hamic's services is irrelevant.

While there is no blanket provision in the policy that excludes all intentional acts, section E does exclude "any dishonest, fraudulent, criminal, malicious or knowingly wrongful or unlawful act, error or omission" and such limitation in errors and omissions policies for professionals is common. 9A Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 131.38 (Nov. 2011). There is authority to suggest that these specific exclusions would be unnecessary if the policy covered only negligent conduct in the first instance. S.E.C. v. Credit Bancorp, Ltd., 147 F.Supp.2d 238, 264 (S.D.N.Y. 2001). Section E further conditions the exclusion on a legal adjudication of the wrongful act. At

---

        financial statements that provide a level of assurance, the utilization of any form of disclaimer of opinion which conveys an assurance of reliability as to matters not specifically disclaimed, or the expression of an opinion on the reliability of an assertion by one party for the use by a third party;
§ 473.302, Fla. Stat. (2011).

this juncture, no legal adjudication has occurred and therefore this clause comes into play only concerning the duty to indemnify.

*"By reason of" the Performance of Professional Services*

The phrase "because of" has been held to mandate causation, as opposed to the broader term "arising out of," which merely indicates some causal connection short of proximate cause. See Garcia v. Federal Ins. Co., 969 So.2d 288, 292 (Fla. 2007) (holding that "because of" is defined as "by reason of" which means caused by); Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 539-40 (Fla. 2005) (holding that "arising out of" requires "some causal connection, or relationship" but not proximate cause). The complaint alleges that Hamic was the legal cause of malicious prosecution. Hamic performed professional accounting services in the review and analysis of the financial documents obtained through subpoenas issued in connection with the investigation of Wescomb and Nicholas. Hamic had prepared the tax returns and corporate books for Exit Realty from 2004 through 2006, some of which he turned over to the state attorney's office. Thus, the charges brought against Nicholas and Wescomb were "by reason of" the rendering of accounting services by Hamic.[28] The complaint does allege that Hamic was

---

[28] This case is distinguishable from those involving accountants who recommend financial investments and then gain from the sale of those investments to their clients through receipt of a commission or who act as trustee. See Mastrom, Inc. v. Continental Cas. Co., 337 S.E.2d 162 (N.C.Ct.App. 1985); George Muhlstock & Co. v. American Home Assurance Co., 502 N.Y.S.2d 174 (N.Y.App.Div. 1986); North River Ins. Co. v. Endicott, 391 N.W.2d 454 (Mich.Ct.App. 1986). While the sale of investments may "arise out of" the professional relationship of accountant with the client, the allegations of

mistaken or grossly negligent in his analysis that Wescomb was not an employee for purposes of receiving a salary and benefits.[29]

## DUTY TO INDEMNIFY

Unlike the duty to defend, the duty to indemnify is not determined from the allegations of the complaint. Whether actual coverage is required cannot be resolved until the outcome of the case, whether by a trial to ascertain all of the facts or by a settlement, which inherently considers all the facts. Northland Cas. Co. v. HBE Corp., 160 F.Supp.2d 1348, 1360 (M.D. Fla. 2001). The only exception is if "the allegations in the complaint could under no circumstances lead to a result which would trigger the duty to indemnify." Northland, 160 F.Supp.2d at 1360. As discussed above, this exception is inapplicable to this case.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)  Plaintiff's Motion for Final Summary Judgment (Dkt. 44) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on September 4, 2012.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

---

this complaint substantiate a finding that Hamic disclosed financial records "by reason of" his professional relationship with Exit Realty.

[29]  This Court need not address whether conspiracy requires an intentional act for purposes of the duty to defend, having determined that one claim triggers the duty to defend. Lime Tree, 980 F.2d at 1405.

**COPIES FURNISHED TO**:
Counsel of Record